Saris, C.J.
Defendant Trevor Charlton ("Charlton") moves for the second time under 28 U.S.C. § 2255 to vacate his 204-month sentence on the basis that he has been incorrectly classified as an Armed Career Criminal. For the reasons discussed below, Charlton's motion (Dkt. No. 212) is ALLOWED.
FACTUAL AND PROCEDURAL BACKGROUND
Charlton was charged on September 29, 2004 in a single-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was convicted on December 10, 2007. On June 9, 2008, relying on the presentence report ("PSR"), the Court imposed a sentence of 204 months imprisonment, which included a sentence enhancement pursuant to the Armed Career Criminal Act ("ACCA"). The PSR deemed Charlton an Armed Career Criminal based on two Massachusetts state court convictions for "serious drug offenses" and three Massachusetts state court convictions for "violent felonies."
The two serious drug offenses identified by the PSR were convictions for the distribution of crack cocaine. Both drug sales occurred during the early morning hours of March 23, 1996 in the same location. At 12:25 AM, Charlton sold three plastic bags of crack cocaine to two individuals identified as Curtis Fitzpatrick and Malik Shabazz. Then, at 1:00 AM, Charlton sold one rock of crack cocaine to an individual identified as John Ward. Both sales were observed by Boston police officers and, following the second sale, the officers arrested Charlton. Charlton was sentenced for both drug offenses on the same date. The PSR drew the details of both incidents from the same Boston Police report. The three violent felonies identified by the PSR were convictions for (1) assault by means of a dangerous weapon ("ADW"); (2) assault and battery to collect a loan ("ABCL"); and (3) assault and battery by means of a dangerous weapon ("ABDW").
On June 16, 2008, Charlton appealed his sentence on the basis, inter alia, that the ACCA enhancement was inapplicable because the Government did not prove the ACCA predicate convictions beyond a reasonable doubt. The First Circuit denied Charlton's appeal and affirmed his sentence. See United States v. Charlton, 600 F.3d 43, 55 (1st Cir. 2010).
On July 5, 2011, Charlton then moved this Court to vacate his sentence pursuant to § 2255. Charlton argued, inter alia, that the ACCA enhancement was inapplicable because he did not have three qualifying predicate offenses. Specifically, Charlton argued that his only predicate offenses were (1) a single serious drug offense for distribution of crack cocaine, and (2) a single violent felony for ADW. On January 2, 2013, the Court denied Charlton's motion *113 to vacate his sentence. The Court found that Charlton's ABDW conviction also constituted a violent felony and, therefore, he had at least three ACCA predicate offenses. The Court did not address Charlton's argument that the two serious drug offenses identified in the PSR should be treated as a single offense for ACCA purposes. On October 28, 2014, Charlton appealed the Court's ruling on his § 2255 motion, but the First Circuit ultimately dismissed the appeal for want of diligent prosecution.
The present motion was initiated when Charlton filed a letter with the Court on June 3, 3016, seeking the appointment of counsel for assistance with a potential claim for relief under Johnson v. United States, --- U.S. ----, 135 S. Ct. 2551, 192 L.Ed.2d 569 (2015) (" Johnson II"), and Welch v. United States, --- U.S. ----, 136 S. Ct. 1257, 194 L.Ed.2d 387 (2016). The Court construed Charlton's letter as a motion pursuant to § 2255 and transferred it to the First Circuit to determine whether Charlton would be allowed to proceed with a second or successive § 2255 motion. On March 14, 2018, the First Circuit granted Charlton's application to proceed with a second or successive § 2255 motion and referred the motion back to this Court.
DISCUSSION
I. Legal Standards
A. 28 U.S.C. § 2255
A federal prisoner "may petition for post-conviction relief under 28 U.S.C. § 2255(a) if, inter alia, the individual's sentence 'was imposed in violation of the Constitution or laws of the United States' or 'is otherwise subject to collateral attack.' " Lassend v. United States, 898 F.3d 115, 122 (1st Cir. 2018) (quoting 28 U.S.C. § 2255(a) ). Second or successive § 2255 motions are subject to the additional requirement that the circuit court must first give permission before the motion can proceed in the district court. Brown v. United States, 906 F.3d 159, 161 (1st Cir. 2018). "As gatekeeper, [the circuit court] may authorize the filing of a successive application only if the application makes a prima facie showing, that it relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Id. (cleaned up). A "prima facie showing" means merely "a sufficient showing of possible merit to warrant a fuller exploration by the district court." Moore v. United States, 871 F.3d 72, 78 (1st Cir. 2017) (quoting Rodriguez v. Superintendent, Bay State Corr. Ctr., 139 F.3d 270, 273 (1st Cir. 1998) ). Once the circuit court authorizes a second or successive § 2255 motion to proceed, the district court still is required to redo the gatekeeping analysis before addressing the merits of the motion. See id. at 85.
B. Armed Career Criminal Act
Under the ACCA, a person who violates 18 U.S.C. § 922(g) and has three previous convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another" is subject to a 15-year mandatory-minimum sentence. 18 U.S.C. § 924(e)(1). The statute defines the term "violent felony" as a felony that either "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. § 924(e)(2)(b). In Johnson II, the Supreme Court held that the ACCA's "residual clause," which defines any crime that "otherwise involves conduct that presents a serious potential risk of physical *114 injury to another" as a "violent felony," is unconstitutionally vague. 135 S. Ct. at 2563. Shortly thereafter, in Welch, the Supreme Court held that its decision in Johnson II was a substantive one and, therefore, has retroactive effect in cases on collateral review. 136 S. Ct. at 1265. Following Johnson II and Welch, "ACCA-enhanced sentences that depended on predicate convictions for offenses qualifying as violent felonies under ACCA's residual clause are now invalid unless those offenses" either involve the use of force per § 924(e)(2)(b)(i) (i.e., the "force clause") or are of a type specifically enumerated in § 924(e)(2)(b)(ii). United States v. Rose, 896 F.3d 104, 106 (1st Cir. 2018).
II. Analysis
A. Timeliness
Before addressing the merits of Charlton's motion, the Court first considers whether it has been timely brought under 28 U.S.C. § 2255(f). A one-year statute of limitations applies to federal prisoners filing § 2255 motions, "which runs from the latest of '(1) the date on which the judgment of conviction bec[ame] final; ... [or] (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.' " Dimott v. United States, 881 F.3d 232, 236 (1st Cir.) (alterations in original) (quoting 28 U.S.C. § 2255(f) ), cert. denied sub nom. Casey v. United States, --- U.S. ----, 138 S. Ct. 2678, 201 L.Ed.2d 1072 (2018). The limitations period for Charlton's claims was triggered by the Supreme Court's ruling in Johnson II on June 26, 2015. See Dixon v. United States, 729 F. App'x 16, 19 (1st Cir. 2018) (per curiam).
Charlton filed his letter for appointment of counsel to assist with potential Johnson II claims on June 3, 2016, more than three weeks before the one-year limitations period for those claims expired. And the Court subsequently construed that letter as a motion pursuant to § 2255. The Government asks the Court to reconsider this decision but provides no persuasive reason why the Court should do so. Given the well-established judicial policy of liberally construing pro se proceedings, see Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and the precedent for treating similar pro se filings as § 2255 motions, see Platt v. United States, Case No. 16-1961 (1st Cir.) (entry dated 7/19/2016) ("Letter Motion" asking for appointment of counsel to file Johnson motion); Wall v. United States, Case No. 16-1971 (1st Cir.) (entry dated 7/22/2016) (one-page motion for reduction of sentence under Johnson and request for appointment of counsel), the Court confirms that the operative date for Charlton's § 2255 motion was June 3, 2016. Therefore, his motion is timely.
In the alternative, the Government argues that the Court should deem Charlton's motion untimely to the extent it raises arguments that are not based on Johnson II. Specifically, the Government wants the Court to find that Charlton's argument concerning his two serious drug offense predicates is not timely because it was not expressly raised in his June 3, 2016 letter motion. Rather, it was first raised by Charlton's court-appointed attorney in a brief submitted on April 30, 2018.
The Court does not need to rely on relation back principles to find that Charlton's argument is timely. Charlton's June 3, 2016 letter motion expressed his intention to challenge his ACCA sentence enhancement in light of the Supreme Court's ruling in Johnson II (and Welch ). This can be fairly construed to encompass all his *115 arguments relating to his ACCA predicates. See Estelle, 429 U.S. at 106, 97 S.Ct. 285. After all, Charlton raised the exact same argument regarding his serious drug offense predicates in his original § 2255 motion. The Court did not address that argument at the time because it concluded that Charlton had three ACCA predicates notwithstanding the question of whether he had one or two serious drug offense predicates. The Supreme Court's subsequent decision in Johnson II not only provided Charlton with a fresh basis to challenge his violent felony predicates, but it also made his arguments related to his serious drug offense predicates relevant again. Because Charlton must succeed on both sets of arguments to vacate his sentence, the Court reads his June 3, 2016 letter as stating his intention to raise both sets of arguments in his § 2255 motion.
Even if this were not the case, however, Charlton's challenge to his serious drug offense predicates would relate back to the date of his letter motion. " Federal Rule of Civil Procedure 15 governs amendments to habeas petitions in a § 2255 proceeding." United States v. Ciampi, 419 F.3d 20, 23 (1st Cir. 2005). "[T]he Rule 15 'relation back' provision is to be strictly construed" in the § 2255 context, and for claims first raised on amendment to relate back, they "generally must arise from the 'same core facts,' and not depend upon events which are separate both in time and type from the events upon which the original claims depended." Id. at 23-24 (quoting Mayle v. Felix, 545 U.S. 644, 657, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005) ). Charlton's § 2255 motion challenges his classification as an Armed Career Criminal based on the predicate offenses identified in the PSR and adopted by the Court at his sentencing. As such, Charlton's challenge to the serious drug offense predicates arises from the "same core facts" as his challenges to the violent felony predicates on the basis of Johnson II. Ciampi, 419 F.3d at 24 ; see also United States v. Turner, 793 F. Supp. 2d 495, 500-01 (D. Mass. 2011) (finding ineffective assistance of counsel claim based on failure to impeach government witness arose from "same core facts" as claim based on failure to investigate and discover impeachment material), aff'd, 699 F.3d 578 (1st Cir. 2012). Therefore, the Court will consider Charlton's arguments concerning his serious drug offense predicates because they have been timely raised.
B. ACCA Predicate Offenses
Charlton's PSR identified five ACCA predicate offenses. Charlton concedes that he has at least one serious drug offense. He also concedes that his ADW conviction constitutes a violent felony under United States v. Whindleton, 797 F.3d 105 (1st Cir. 2015). This leaves three offenses in dispute, none of which can be deemed an ACCA predicate if Charlton is to succeed on his motion to vacate his sentence. Thus, Charlton's motion turns on two legal issues. First, whether his ABCL and ABDW convictions are valid predicate offenses under the ACCA's force clause. Second, whether his two convictions for serious drug offenses constitute separate ACCA predicates.
a. Violent Felonies
Charlton contends that his prior convictions for ABCL and ABDW are no longer ACCA predicates under Johnson II.
As an initial matter, the Court addresses the issue of procedural default. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent."
*116 Bousley v. United States, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (cleaned up). The Government argues, at least with respect to the ABDW conviction, that Charlton's arguments are defaulted because he did not raise them earlier in proceedings and he cannot now show actual prejudice. Yet courts in this district have universally rejected arguments by the Government that Johnson II claims are procedurally defaulted. See Virden v. United States, No. CR 09-10325-LTS, 2017 WL 470891, at *3 (D. Mass. Feb. 3, 2017) (collecting cases). Johnson II marked a "monumental shift" in sentencing law that satisfies the "cause" requirement. United States v. Webb, 217 F. Supp. 3d 381, 390 (D. Mass. 2016) ; see also Lassend, 898 F.3d at 122 (finding no reasonable basis to challenge ACCA residual clause prior to Johnson II ). Meanwhile, the "actual prejudice" analysis typically merges with the merits of the habeas petitioner's Johnson II claims. See, e.g., Collins v. United States, 354 F. Supp. 3d 105, 112 (D. Mass. 2019), appeal filed, No. 19-1338 (1st Cir. Apr. 10, 2019); O'Shea, 256 F. Supp.3d 72, 80 (D. Mass. 2017), appeal dismissed, No. 17-1719, 2017 WL 7036667 (1st Cir. Sept. 14, 2017) ; Webb, 217 F. Supp. 3d at 390 ; see also Lassend, 898 F.3d at 123 ("While we have found little law on the topic of prejudice, we think that the prejudice inquiry dovetails with the merits inquiry, and is not satisfied by mere argument."). Therefore, the Court proceeds to the merits of Charlton's Johnson II claims.
Charlton argues that his ABCL conviction cannot be an ACCA predicate based on the First Circuit's decisions in United States v. Faust, 853 F.3d 39 (1st Cir.), reh'g denied, 869 F.3d 11 (1st Cir. 2017), and United States v. Windley, 864 F.3d 36 (1st Cir. 2017) (per curiam). In Faust, the First Circuit held that assault and battery of a police officer ("ABPO") "is divisible between the intentional and reckless forms," but the intentional form is not "further divisible between offensive and harmful assault and battery." 853 F.3d at 58. Since offensive assault and battery does not involve "violent force," the intentional form of ABPO is "overbroad and categorically cannot count as a predicate for ACCA purposes." Id. The First Circuit then remanded the case for the district court to address whether the reckless form of ABPO could constitute an ACCA predicate. Id. at 60. Subsequently, in Windley, the First Circuit held that the reckless form of ABDW did not constitute an ACCA predicate because its mens rea requirement rendered it overbroad. 864 F.3d at 38-39. Although Windley concerned ABDW rather than ABPO, its holding that a felony with a mens rea of recklessness did not constitute an ACCA predicate effectively resolved the question the First Circuit left unanswered in Faust. In other words, there is no form of ABPO that counts as a violent felony for ACCA purposes.
Under Massachusetts law, ABPO and ABCL are both variants of simple assault and battery. See Commonwealth v. Brown, 93 Mass.App.Ct. 1120, 107 N.E.3d 1256 (unpublished table decision), at *2 (assault and battery is lesser included offense of ABCL), review denied, 480 Mass. 1109, 111 N.E.3d 284 (2018) ; Commonwealth v. Phillips, 54 Mass.App.Ct. 1109, 765 N.E.2d 826 (unpublished table decision), at *1 (2002) (assault and battery is lesser included offense of ABPO). What separates ABPO from ABCL is the target or purpose of the assault and battery, not the mens rea or degree of force requirements. Compare Mass. Gen. Laws ch. 265, § 13D (covering "[w]hoever commits an assault and battery upon any public employee when such person is engaged in the performance of his duties"), with id. § 13C (covering "[w]hoever commits an assault *117 and battery upon another for the purpose of collecting a loan"). Therefore, the reasoning of Faust and Windley is equally applicable to ABCL offenses. The Government does not contest this proposition. Since there is no form of ABCL that satisfies the force clause, Charlton's ABCL conviction is not an ACCA predicate offense.
Charlton also argues that his ABDW conviction is not of a type that qualifies as an ACCA predicate. In United States v. Tavares, the First Circuit held that ABDW is divisible between its intentional and reckless forms, and that the intentional form of ABDW is an ACCA predicate. 843 F.3d 1, 13, 17 (1st Cir. 2016). In Windley, it held that the reckless form is not. 864 F.3d at 38-39. For Charlton's ABDW conviction to be an ACCA predicate, then, it must be for the intentional form of the offense. See United States v. Kennedy, 881 F.3d 14, 19-20 (1st Cir. 2018).
The parties disagree over who must prove whether Charlton was convicted of the intentional or reckless form of ABDW to sustain his sentence. At the time of sentencing, "[t]he Government bears the burden of establishing that a prior conviction qualifies as a predicate offense for sentencing enhancement purposes." United States v. Dávila-Félix, 667 F.3d 47, 55 (1st Cir. 2011). Under Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), the Government may only rely on a limited set of documents in determining whether a prior conviction qualifies as a violent felony, i.e., the indictment, complaint, jury instructions, or plea agreement and colloquy. The First Circuit has not addressed which party bears the burden of producing Shepard documents in the context of a collateral challenge to an ACCA sentence. Yet courts in this district have generally held that the Government retains the burden in Johnson II -based challenges. See, e.g., United States v. Morales, No. CR 12-10323, 2018 WL 1122357, at *2 (D. Mass. Mar. 1, 2018) (placing burden on Government to prove violent felony with Shepard documents in § 2255 motion); United States v. Franco, No. CR 11-10228, 2018 WL 1122356, at *2 (D. Mass. Mar. 1, 2018) (same); United States v. Cruz, 234 F. Supp. 3d 328, 330 (D. Mass. 2017) (same); Virden, 2017 WL 470891, at *4 (same); United States v. Aponte, 208 F. Supp. 3d 347, 349 (D. Mass. 2016) (same); Stampley v. United States, No. 1:11-CR-10302-IT, 2016 WL 4727136, at *4 (D. Mass. Sept. 9, 2016) (same). Indeed, this Court has previously rejected the argument that the burden shifts to the defendant when he brings a § 2255 motion to challenge his sentence. See United States v. Turner, No. 03-cr-10166, ECF No. 218, at 5:21-23 (D. Mass. Apr. 27, 2016) ("I don't accept the government's position, which was unsupported by case law, that somehow the burden shifts to the defendant to come up with the Shepard documents at this stage."). The Court sees no reason to reach a different conclusion here.
Nonetheless, the Government argues on the basis of the First Circuit's plain error caselaw that the burden should rest with Charlton. This argument runs as follows: On direct appeal, to prove plain error a defendant must establish prejudice. United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011). To show prejudice in a plain error challenge to an ACCA predicate offense, the First Circuit has held the defendant "bears the burden of proving either (1) that the offense is indivisible; or (if the offense is not shown to be indivisible) (2) that the prior conviction was for the non-qualifying form of the offense." United States v. Bain, 874 F.3d 1, 31 (1st Cir. 2017), cert. denied, --- U.S. ----, 138 S. Ct. 1593, 200 L.Ed.2d 780 (2018) ; see also *118 United States v. MacArthur, 805 F.3d 385, 388 (1st Cir. 2015) ; United States v. Serrano-Mercado, 784 F.3d 838, 847-48 (1st Cir. 2015) ; United States v. Davis, 676 F.3d 3, 10 (1st Cir. 2012). This burden includes, if necessary, providing Shepard documents. See Bain, 874 F.3d at 31. Since a habeas petitioner must show "actual prejudice" to avoid procedural default, and this standard is even higher than that which applies in plain error review, see Ramirez-Burgos v. United States, 313 F.3d 23, 32 n.12 (1st Cir. 2002), it follows that the burden of providing Shepard documents should be placed on the defendant here too.
The problem with this argument is that it ignores the exception to the plain error rule recognized by the First Circuit in United States v. Serrano-Mercado and, more recently, in United States v. Bain. In Serrano-Mercado, the First Circuit acknowledged that a defendant might not bear the burden of producing Shepard documents where, at the time of sentencing, the charged ACCA predicates "qualified categorically as ... crime[s] of violence." 784 F.3d at 849. In Bain, the First Circuit confirmed its "burden-shifting rule retains the exception for the circumstances outlined in Serrano-Mercado." 874 F.3d at 31 n.20. In both cases, the First Circuit had in mind the situation where the law changed between the time of sentencing and direct appeal, such that it would be unfair to shift the burden to the defendant because he had no incentive to hold the Government to its Shepard burden in the first instance.[1] See id.; Serrano-Mercado, 784 F.3d at 849. This same principle applies to a Johnson II -based § 2255 motion. Where, as here, Johnson II was decided after Charlton's original sentencing and direct appeal, the Court will not shift the burden from the Government to prove that the charged predicate offenses satisfy the ACCA's force clause.
As it happens, there is one Shepard-approved document already in the record from Charlton's prior § 2255 motion. The relevant portions of Charlton's ABDW plea colloquy, however, do not establish whether he pleaded guilty to the intentional or reckless form of the offense. The Government has not produced any additional Shepard documents. Since it is the Government's burden to do so, and the only available Shepard document is inconclusive as to whether Charlton was convicted of the intentional or reckless form of ABDW, the Court concludes that Charlton's ABDW conviction is not a valid ACCA predicate offense. See Kennedy, 881 F.3d at 23-24.
b. Serious Drug Offenses
The Court's conclusion that Charlton's ABCL and ABDW convictions are not ACCA predicates does not end the analysis. As it stands, Charlton still has one violent felony and two possible serious drug offense predicates. There is no dispute that his convictions for the sale of crack cocaine are "serious drug offenses" within the meaning of the ACCA. Rather, Charlton contends that the convictions did not occur "on occasions different from one another," and, therefore, they cannot be counted as separate predicate offenses. 18 U.S.C. § 924(e)(1).
*119 In opposition, the Government first argues that Charlton cannot raise this argument in a second or successive § 2255 motion. In its order allowing Charlton's § 2255 motion to proceed, the First Circuit noted that this Court still would have to resolve "the question whether, given the history of his criminal and habeas proceedings, Charlton may challenge the treatment of his predicate drug convictions at this juncture." Dkt. No. 232. Although the Court concludes that Charlton has timely raised his challenge to his drug offense predicates, whether it can be raised in a second or successive § 2255 motion is a separate question. Section 2255(h) requires for a second or successive motion to proceed it must "contain ... a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h) ; see also Moore, 871 F.3d at 85 (requiring district court perform gatekeeping function for second or successive § 2255 motions). There is no doubt that that Charlton's serious drug offences argument, standing alone, does not rely on a new rule of constitutional law. After all, Charlton raised precisely the same argument in his original § 2255 motion prior to the Supreme Court's decision Johnson II. But Charlton is re-raising his argument now in conjunction with other arguments that are newly available under Johnson II.
The question, then, is whether Charlton's serious drug offences argument is sufficiently related to his Johnson II -based arguments to be permissible in a second or successive § 2255 motion. The Government argues that the Court must conduct a claim-by-claim analysis of Charlton's motion and reject any claims not based exclusively on a new rule of constitutional law, i.e., his argument regarding his serious drug offenses. The Court is not persuaded that § 2255(h) is that mechanistic, especially considering that the serious drug offenses argument in fact was raised in Charlton's original motion but not decided by the Court. The Government also cites to the unpublished opinion Perez v. United States in which the Eleventh Circuit held that a second or successive § 2255 motion fails where there are at least three ACCA predicate offenses not susceptible to challenge based on a new rule of constitutional law, like Johnson II. 730 F. App'x 804, 810-11 (11th Cir.) (per curiam), cert. denied, --- U.S. ----, 139 S. Ct. 323, 202 L.Ed.2d 227 (2018). Yet Perez is distinguishable because there is no indication from the opinion that Perez raised his non- Johnson II claims in his original § 2255 motion. See id. at 806. Here, that is the dispositive fact.
Had the Court addressed Charlton's serious drug offence argument when adjudicating his initial § 2255 motion back in 2013, it would be a non-issue now. Either the Court could have rejected the argument and there would be no viable second or successive § 2255 motion because Charlton would have three predicate offenses notwithstanding Johnson II. Or the Court could have accepted the argument and Charlton would now prevail on his second or successive § 2255 motion. Instead, the Court did not consider the argument because it was not necessary to its decision. But that decision was based entirely on the conclusion that Charlton's ABDW conviction was a violent felony which, for the reasons discussed above, has since been invalidated by Johnson II. Accordingly, the Court will not hold its previous decision not to consider Charlton's serious drug offense argument against him now. The Court finds the argument is sufficiently related to Charlton's Johnson II claims for him to pursue it in a second or successive *120 § 2255 motion.[2]
The ACCA commands that predicate offenses be "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). "[T]he 'occasions' inquiry requires a case-by-case examination of the totality of the circumstances." United States v. Stearns, 387 F.3d 104, 108 (1st Cir. 2004). Relevant factors to this inquiry include "the identity of the victim; the type of crime; the time interval between the crimes; the location of the crimes; the continuity vel non of the defendant's conduct; and/or the apparent motive for the crimes." Id. The time interval between the two crimes, however, is of particular importance. If there is "a time interval during which defendant successfully has completed his first crime, safely escaped, and which affords defendant a 'breather,' viz., a period (however brief) which is devoid of criminal activity and in which he may contemplate whether or not to commit the second crime," then the crimes occurred on different occasions for ACCA purposes. See id.
Based on the totality of all these factors, the Court concludes that Charlton's two drug convictions are not likely to be separate ACCA predicates. The sales of crack occurred 35 minutes apart on the same city block on the same night during the same course of conduct. There was no intervening arrest or "escape."[3] The cases in this circuit are distinguishable because the interval between the crimes counted as two predicates has been substantially longer. See United States v. Callahan, 149 F. App'x 4, 6 (1st Cir. 2005) (per curiam) (finding two counts of cocaine distribution were separate ACCA predicates because the sales were made to the same undercover agent but occurred six days apart in different locations); Stearns, 387 F.3d at 108 (finding two burglaries committed on successive days directed against same victim were separate ACCA predicates). The issue is close, though, because the caselaw in other circuits has deemed two sales as separate predicates with brief time spans between the sales. See, e.g., United States v. Cardenas, 217 F.3d 491, 492 (7th Cir. 2000) (finding two sales of cocaine to same police informants 45 minutes and half a block apart constituted separate ACCA predicates); United States v. Letterlough, 63 F.3d 332, 337 (4th Cir. 1995) (finding two sales of cocaine to same undercover agent 90 minutes apart constituted separate ACCA predicates); cf. United States v. Van, 543 F.3d 963, 966 (8th Cir. 2008) (declining to decide whether convictions for crack cocaine sales 30 minutes apart occurred on different occasions from one another).
Even if his drug convictions are treated as separate predicates, the main thrust of Charlton's argument is aimed at the sufficiency of the Government's evidence. The PSR draws its information from a single police report, which under Shepard is not a *121 valid source for establishing ACCA predicates. See 544 U.S. at 22, 26, 125 S.Ct. 1254. The difficulty with this argument is that Shepard specifically applies in the context of establishing violent felony predicates, see id at 26, 125 S.Ct. 1254, and the First Circuit has not extended its holding to apply either in the context of establishing serious drug offence predicates or in the context of determining whether predicate offences occurred on different occasions. Thus, Charlton is asking the Court to expand the Shepard caselaw and hold that the Government must prove that ACCA predicates were "committed on occasions different from one another" with Shepard-approved documents.
If it were to do so, the Court would not be breaking new ground. The Second, Fourth, Fifth, Sixth, Seventh, Tenth, Eleventh, and D.C. Circuits have all concluded that Shepard applies to the "different occasions" inquiry. See United States v. King, 853 F.3d 267, 273 (6th Cir. 2017) ; United States v. Dantzler, 771 F.3d 137, 139 (2d Cir. 2014) ; Kirkland v. United States, 687 F.3d 878, 886 & n.9 (7th Cir. 2012) ; United States v. Boykin, 669 F.3d 467, 472 (4th Cir. 2012) ; United States v. Sneed, 600 F.3d 1326, 1333 (11th Cir. 2010) ; United States v. Thomas, 572 F.3d 945, 950 (D.C. Cir. 2009) ; United States v. Fuller, 453 F.3d 274, 279 (5th Cir. 2006) ; United States v. Harris, 447 F.3d 1300, 1305 (10th Cir. 2006). Of the circuit courts that have considered the question, only the Eighth Circuit has declined to extend Shepard. See United States v. Evans, 738 F.3d 935, 936 (8th Cir. 2014) (per curiam). At least one other court in this district also has concluded that Shepard applies to the different occasions inquiry. See United States v. Gautier, 590 F. Supp. 2d 214, 232 (D. Mass. 2008). For its part, the Government does not address the merits of whether Shepard should be extended. Instead, the Government argues that because Charlton failed to object to the descriptions in the PSR at sentencing, he now bears the burden of proving with Shepard documents that his drug convictions did not occur on different occasions.
The Court agrees with the reasoning of most circuit courts and concludes that the Government must establish with Shepard documents that ACCA predicate offenses were committed on different occasions. Also, for the reasons already discussed in detail above, the Court sees no reason to shift this burden from the Government to Charlton on collateral review in the context of a Johnson II motion. The only Shepard documents in the record concerning Charlton's drug offenses are the criminal complaints. The complaints indicate only that the offenses occurred on the same date at the same locations. Based on this information alone, the Court cannot ascertain whether the two drug offenses were committed on different occasions. See King, 853 F.3d at 278-79 ; Kirkland, 687 F.3d at 887-88. Because the Government has not supplied the Court with Shepard documents sufficient to establish that Charlton's two drug convictions are separate offenses, the Court concludes that they only constitute a single ACCA predicate.
ORDER
For the reasons stated above, Charlton's motion (Dkt. No. 212) is ALLOWED. The Court vacates his sentence and shall schedule resentencing.

In an attempt to undermine this exception, the Government points to United States v. Davis. In Davis, the law changed between the time of sentencing and appeal, but the First Circuit found that Davis did not establish prejudice because he "made no argument that the assault and battery was anything other than the harmful type." 676 F.3d at 9. Davis predates both Serrano-Mercado and Bain and, to the extent the cases conflict, the Court will follow the First Circuit's more recent precedent.

In his supplemental brief filed after the hearing, Charlton suggests an alternative procedural maneuver to overcome this issue. He argues that the Court could re-open his initial § 2255 motion pursuant to Federal Rule of Civil Procedure 60(b) and decide the serious drug offences question. While this is a novel approach, the Court does not need to go down that path to grant the relief Charlton seeks.

The fact that the PSR treated Charlton's two drug convictions as a single sentence for the purposes of criminal history scoring does not influence the analysis of whether they are separate ACCA predicates. See United States v. Riddle, 47 F.3d 460, 461-62 (1st Cir. 1995) (per curiam); see also United States v. Reed, 830 F.3d 1, 6 (1st Cir. 2016) ("T]his circuit has already rejected the idea that the consolidation of convictions for the purposes of sentencing suffices to merge those convictions into a single ACCA predicate.").